140 A.3d 651

**COMMONWEALTH of Pennsylvania, Appellant**

v.

**Matthew Bryan WOLFE, Appellee.**

Supreme Court of Pennsylvania.

Argued Nov. 18, 2015.

Resubmitted Jan. 20, 2016.

Decided June 20, 2016.

38

Hugh J. Burns, Jr., Esq., Philadelphia, for Pennsylvania District Attorney's Association, amicus curiae.

Peter Rosalsky, Esq., Defender Association of Philadelphia, for Defender Association of Philadelphia, amicus curiae.

Andrew Travis LeFever, Esq., Susan E. Moyer, Esq., Craig William Stedman, Esq., Lancaster County District Attorney's Office, for Commonwealth of Pennsylvania.

Todd Everett Brown, Esq., MaryJean Glick, Esq., Lancaster County Public Defender's Office, Leonard Sosnov, Esq., Harrisburg, for Matthew Bryan Wolfe.

SAYLOR, C.J., BAER, TODD, DONOHUE, DOUGHERTY, WECHT, JJ.

*Chief Justice Saylor delivered the Opinion of the Court with respect to Parts I and II(B), joined by Justices Baer, Donohue and Wecht. Chief Justice Saylor also authored Part II(A), which is joined by Justice Donohue. Justice Baer files a concurring opinion pertaining to Part II(A), joined by Justice Wecht. Justice Todd files a dissenting opinion, joined by Justice Dougherty, and Justice Dougherty files a separate dissenting opinion.*

## OPINION

Chief Justice SAYLOR.[1]

Appeal was allowed to assess the validity of the Superior Court's *sua sponte* determination that a sentencing statute is facially unconstitutional under *Alleyne v. United States*, —— U.S. ——, 133 S.Ct. 2151, 186 L.Ed.2d 314 (2013).

1. This matter was reassigned to this author.

40

## I. Background

In August 2012, Appellee, an eighteen-year-old male, engaged in sexual intercourse with a thirteen-year-old girl on several occasions. He was charged with and convicted in a jury trial of a number of sexual offenses, including two counts of involuntary deviate sexual intercourse under Section 3123(a)(7) of the Crimes Code, 18 Pa.C.S. § 3123(a)(7). This statute prescribes, as a general rule, that it is a felony of the first degree to engage in deviate sexual intercourse with a complainant who is less than sixteen years of age. *See id.*

During Appellee's trial and prior to sentencing, the Supreme Court of the United States issued its *Alleyne* decision, overruling its own prior precedent and establishing a new constitutional rule of law, grounded on the Sixth Amendment to the United States Constitution. *See Alleyne,* —— U.S. at ——, 133 S.Ct. at 2162–63. The *Alleyne* Court held that any fact that, by law, increases the penalty for a crime must be treated as an element of the offense, submitted to a jury rather than a judge, and found beyond a reasonable doubt. *See id.* at ——, 133 S.Ct. at 2163. The opinion also explained that the requirement to treat factors triggering at-law mandatory sentencing enhancements as offense elements "enables the defendant to predict the legally applicable penalty from the face of the indictment." *Id.* at ——, 133 S.Ct. at 2161.

The effect of *Alleyne*'s new rule was to invalidate a range of Pennsylvania sentencing statutes predicating mandatory minimum penalties upon non-elemental facts and requiring such facts to be determined by a preponderance of the evidence at sentencing. *See, e.g., Commonwealth v. Hopkins,* 632 Pa. 36, 61–62, 117 A.3d 247, 262 (2015) (holding that Section 6317 of the Crimes Code is constitutionally infirm for these reasons, under *Alleyne* ).

Among a litany of other prescriptions for mandatory minimum sentences, Section 9718(a)(1) of the Sentencing Code requires imposition of a ten-year mandatory minimum sentence for IDSI crimes, where the victims are less than sixteen years of age. *See* 42 Pa.C.S. § 9718(a)(1). Of particular

relevance here, the statute specifies that its provisions "shall not be an element of the crime," and that the applicability "shall be determined at sentencing," with factual matters being resolved by the sentencing court "by a preponderance of the evidence." *Id.* § 9718(c). Both the directive that a sentencing factor establishing a mandatory minimum sentence is not an element of a crime and the allocation of decision-making authority relative to such factor to a judge contravene *Alleyne*. *See Hopkins*, 632 Pa. at 53–55, 117 A.3d at 257–58. Section 9718 also does not require the Commonwealth to provide notice that it intends to pursue the mandatory minimum sentence before trial, but rather, prescribes only that such notification must be furnished after conviction and before sentencing. *See* 42 Pa.C.S. § 9718(c). Again, the absence of a requirement for pretrial notice of aggravation is in substantial tension with *Alleyne*. *See Hopkins*, 632 Pa. at 54–55, 117 A.3d at 258. Significantly, however, at least for purposes of the arguments presented in this appeal, the statute's proclamation that the age-of-the-victim factor is not an offense element is anomalous, since the victim's age is, in fact, encompassed within IDSI offenses under Section 3123(a)(7), under which Appellee was convicted.

In October 2013, the sentencing court imposed mandatory minimum sentences of ten years upon Appellee for each IDSI offense, albeit that the court specified that those sentences would run concurrently. The record contains no evidence that the sentencing court conducted any independent inquiry or assessment relative to determining the victim's age, as directed by Section 9718(c). Appellee pursued relief in a direct appeal; however, he did not raise a challenge to his sentences under *Alleyne*.

Nevertheless, the Superior Court invoked *Alleyne sua sponte*, vacated the judgments of sentence, and remanded for resentencing. *See Commonwealth v. Wolfe*, 106 A.3d 800, 801, 806 (Pa.Super.2014). The majority explained that ordinary waiver principles do not apply to "the legality of the sentence," and that illegal sentences may be corrected by appellate courts of their own accord. *Id.* at 801 (citing *Commonwealth*

*v. Orellana,* 86 A.3d 877, 883 n. 7 (Pa.Super.2014)). Further, the majority observed that the Superior Court had previously determined that violations of *Alleyne*'s commands implicate sentencing legality. *See id.* (citing *Commonwealth v. Lawrence,* 99 A.3d 116, 122–25 (Pa.Super.2014)).

The majority regarded the *Alleyne* error in the present case as being patent, in that the mandatory minimum sentence was imposed under the authority of a statute predicating its applicability on a fact designated as a non-element and directing a judge to make the determination by a preponderance of the evidence. In this regard, the majority noted that the Superior Court had previously invalidated a range of similarly-patterned statutes. *See id.* at 803–05 (citing *Commonwealth v. Newman,* 99 A.3d 86 (Pa.Super.2014) (*en banc* ) (holding that Section 9712.1 of the Sentencing Code violates *Alleyne* ), and *Commonwealth v. Valentine,* 101 A.3d 801 (Pa.Super.2014) (same, relative to Sections 9712 and 9713 of the Sentencing Code)).

The majority acknowledged the anomaly in Section 9718(c), in that the statute mandates that the age factor "shall not be an element of the crime," whereas, in point of fact, age is an element. Indeed, the majority recognized that, in *Commonwealth v. Matteson,* 96 A.3d 1064 (Pa.Super.2014), the Superior Court had previously decided that a sentence under Section 9718(a)(1) did not violate *Alleyne,* on account of this incongruity. *See Wolfe,* 106 A.3d at 805–06 (quoting *Matteson,* 96 A.3d at 1066–67). Nevertheless, the majority regarded *Matteson* as implicitly effectuating a severance of unconstitutional provisions of Section 9718, an exercise which the Superior Court had refused to undertake in other cases, including the *en banc Newman* decision. *See Newman,* 99 A.3d at 102 ("We find that it is manifestly the province of the General Assembly to determine what new procedures must be created in order to impose mandatory minimum sentences in Pennsylvania following *Alleyne.*"); *see also Valentine,* 101 A.3d at 811 (concluding, in accordance with *Newman,* that a court of common pleas had performed "an impermissible legislative function" by submitting special interrogatories to a jury in an effort to work

around the unconstitutional terms of a statute directing that fact-finding relative to a mandatory minimum sentence was to be accomplished at the sentencing stage).

All members of the three-judge panel took the opportunity to express their views that *Newman* was wrongly decided and severance should be permitted. *See Wolfe,* 106 A.3d at 803 n. 4 (Mundy, J.); *id.* at 807 (Bowes, J., concurring, joined by Jenkins, J.). Furthermore, because the jury, in fact, had determined that the victim in Appellee's case was under the age of sixteen, left to her own devices, Judge Bowes would have deemed any *Alleyne*-related error to have been harmless. *See id.* at 808.

Judge Bowes also expressed concern with the majority's approach in addressing severability *sua sponte*. *See id.* at 809. In her view, the matter was sufficiently debatable, and the underlying questions sufficiently complex, that resolution should have occurred only after full briefing. *See id.*

Six months after the Superior Court filed its opinion in *Wolfe,* this Court set forth its own decision in *Hopkins,* which vindicated the *en banc Newman* panel's position that unconstitutional terms of a mandatory minimum sentencing statute— including the requirement for operative facts to be determined by a judge at sentencing by a preponderance of the evidence— cannot be severed by the judiciary. *See Hopkins,* 632 Pa. at 61–62, 117 A.3d at 262. In this regard, this Court found the defective provisions to be simply too fundamental to the sentencing statute to permit severance. *See id.* at 259–60 ("[I]t cannot be stressed enough that the legislature intended that Section 6317 be a sentencing provision and not a substantive offense."). In addition, *Hopkins* emphasized the courts' limited role in redressing statutes infused with such deep-seated constitutional infirmities. *See id.* at 262 ("[W]e will not judicially usurp the legislative function and rewrite [the mandatory minimum sentencing statute] or create a substantive offense which the General Assembly clearly did not desire. Rather, we leave it to our sister branch for an appropriate statutory response to the United States Supreme Court's decision in *Alleyne*."). *Hopkins* also declined to cognize work-

44

around efforts deviating from the statutory commands, such as the use of special interrogatories. *Id.* ("[T]he General Assembly has made clear that the provisions of Section 6317 are not to be elements of the crime and no substitute process can fix that.").

We allowed appeal in this case to consider the issue, as framed by the Commonwealth, of "[w]hether the Superior Court['s] *sua sponte* determination that the ten year mandatory minimum sentence for [IDSI] . . . is facially unconstitutional is erroneous as a matter of law?" *Commonwealth v. Wolfe,* 632 Pa. 446, 121 A.3d 433, 434 (2015) (*per curiam*). Our review of the legal questions involved is plenary.

■ Presently, the Commonwealth argues that the Superior Court's decision to proceed *sua sponte* upon its discernment of an *Alleyne* violation was improper. In support of this proposition, the Commonwealth references several decisions that generally reinforce the issue preservation doctrine. *See id.* at 11 (citing *Commonwealth v. Colavita,* 606 Pa. 1, 29–30, 993 A.2d 874, 891–92 (2010), and *Steiner v. Markel,* 600 Pa. 515, 521–22, 968 A.2d 1253, 1256–57 (2009)). The Commonwealth, however, does not discuss the line of cases clearly implicated by the Superior Court's opinion, per which courts are empowered to address illegal sentences regardless of issue preservation concerns. *See, e.g., Commonwealth v. Foster,* 609 Pa. 502, 522, 17 A.3d 332, 345 (2011) (Opinion Announcing the Judgment of the Court); [2] *cf. Commonwealth v. Dickson,* 591 Pa. 364, 370, 918 A.2d 95, 99 (2007) ("[I]f the sentence clearly implicates the legality of sentence, whether it was

2. Although *Foster* is a plurality opinion, there was a consensus among a majority of Justices that there is some range of sentences concerning which challenges are "nonwaivable" and, thus, subject to correction by the courts of their own accord. *See Foster,* 609 Pa. at 522, 17 A.3d at 345 (Opinion Announcing the Judgment of the Court); *id.* at 534, 17 A.3d at 352 (Castille, C.J., concurring) (explaining that at least "[a] classic claim of sentencing 'legality' . . . may be raised *sua sponte* "); *id.* at 539–41, 17 A.3d at 355–56 (Saylor, J., concurring) ("To the degree [that the lead opinion] reflects that review of legality-of-sentence claims has been made available in limited categories of cases beyond those involving claims that sentences exceeded statutory maximums—despite non-adherence to ordinary principles of issue preservation and presentation—I support its reasoning and holding.").

properly preserved below is of no moment, as a challenge to the legality of sentence cannot be waived.").

On the merits, the Commonwealth argues that Appellee received all of the benefit of the constitutional right announced in *Alleyne*. According to its brief, "[n]o judicial fact finding took place in this case," since the age factor already was an element of the IDSI crime. Brief for Appellant at 8. In this respect—and although Section 9718(c) explicitly directs sentencing judges to conduct the material fact-finding—the Commonwealth loosely pronounces that "Section 9718 does not require any judicial fact finding." *Id.* at 17. In the same vein, the Commonwealth indicates that "Section 9718(a) standing alone is all that is required to impose the mandatory sentence and it fully comports with the dictates of *Alleyne*," *id.*, thus implicitly suggesting that the elemental and procedural requirements of Section 9718(c) that are contrary to *Alleyne* should be severed, disregarded, displaced, or otherwise obviated.

For similar reasons, to the extent that this Court would find a constitutional violation, the Commonwealth urges us to consider the error harmless. The Commonwealth explains that *Alleyne* is an extension of *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), and the Supreme Court of the United States has held that *Apprendi* errors can be harmless. *See* Brief for Appellant at 17 (citing *United States v. Cotton*, 535 U.S. 625, 632–33, 122 S.Ct. 1781, 1786, 152 L.Ed.2d 860 (2002)). The Commonwealth cites *Neder v. United States*, 527 U.S. 1, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999), for the proposition that "where a reviewing court concludes beyond a reasonable doubt that [an offense] element [omitted from a jury charge] was uncontested and supported by overwhelming evidence, such that the jury verdict would have been the same absent the error, the erroneous instruction is properly found to be harmless." *Id.* at 17, 119 S.Ct. at 1837.

It is also the Commonwealth's position that the Superior Court's *en banc* decision in *Newman* should be overruled insofar as it denominated mandatory minimum sentencing

statutes as being facially unconstitutional. Once again without reference to 9718(c), the Commonwealth repeatedly states that "Section 9718 as currently written fully complies with and provides any defendant with all the Constitutional rights guaranteed by the Sixth Amendment." Brief for Appellant at 8, 20. In a footnote, the Commonwealth alludes to the determination in *Hopkins* that severance was unavailable relative to the sentencing provision under consideration there, but the Commonwealth nonetheless contends that severance would be more readily accomplished as to Section 9718. *See id.* at 20 n. 5.

The Pennsylvania District Attorneys Association ("PDAA") has submitted a brief as an *amicus*. Unlike the Commonwealth, PDAA does recognize that there is a line of cases from this Court vindicating the appellate courts' authority to act *sua sponte* to redress illegal sentences. *See supra* note 2. PDAA describes this area of the law as "confused," however, and urges clarification in the form of a rule confining "illegality" to instances in which jurisdiction to impose a sentence is clearly lacking. *See* Brief for *Amicus* PDAA at 17–18.

On the merits, PDAA supports the Commonwealth's view that Section 9718 is not facially unconstitutional, and that it can be applied in the present scenario without violating the Constitution. The analysis initially segues into a harmless error assessment, in which PDAA cites *Washington v. Recuenco*, 548 U.S. 212, 126 S.Ct. 2546, 165 L.Ed.2d 466 (2006), as an example where the Supreme Court of the United States deemed an *Apprendi*-based error to be harmless. *See id.* at 221–22, 126 S.Ct. at 2552–53. To mitigate the implication that a harmless-error analysis would suggest that Section 9718 might be invalid in the first instance, PDAA reasons that "applying a statute in a manner that is constitutionally erroneous but harmless is at least one circumstance in which the statute continues to be valid." Brief for *Amicus* PDAA at 10.

In any event, it is also PDAA's position that Section 9718 is not constitutionally erroneous. In this regard, PDAA asserts that *Alleyne* does not mandate particular forms of legislation, but rather, merely enforces the federal constitutional rights to

trial by a jury and due process by requiring factual triggers to mandatory minimum sentences to be specified in the criminal information and proven at trial by a jury (in absence of a jury-trial waiver), beyond a reasonable doubt. Where, as here, these elements are met in the abstract, PDAA contends that there is no constitutional violation in the first instance, and further assessment of the terms of the sentencing statute is unnecessary and, indeed, misguided. "By focusing on the sentencing statute," PDAA indicates, "the Superior Court was looking through the wrong end of the telescope." Brief for *Amicus* PDAA at 12; *id.* ("Here the relevant task was not to compare the *statute* with *Alleyne,* but its *application.*" (emphasis in original)).

PDAA also takes the opportunity to express its continuing disagreement with *Hopkins* and urges that it should be over-ruled, particularly as concerns the decision to deny severance. *See, e.g., id.* at 25–26 ("A due process decision by the federal Supreme Court should not be construed to require wholesale rewriting of criminal statutes."). In the absence of severance, PDAA contends that the problematic requirements of Section 9718 can be deemed "preempt[ed]" or "moot" or "dormant" or "irrelevant." *Id.* at 25. In this way, PDAA envisions that the remainder of the statute can be constitutionally applied without severance.

Appellee, on the other hand, charges that "this case is an inappropriate vehicle to even consider the arguments of the Commonwealth and its amicus because … they are all based on the faulty premise that [Appellee] received the requisite statutory and due process protections in this case." Brief for Appellee at 22. Appellee stresses that the relevant provisions of Section 9718 are materially identical to those before the Court in *Hopkins,* which held that the sentencing statute containing them was void in its entirety. *See Hopkins,* 632 Pa. at 57–62, 117 A.3d at 260–62. Appellee further observes that *Hopkins* confirmed that the statute could not be "cured" by a jury determination at trial of the factual element necessary to be established. *See id.* at 41, 57–58, 117 A.3d at 250, 260. Additionally, Appellee points to a series of *per curiam*

48

orders in which this Court, in more than thirty separate cases, has affirmed decisions of the intermediate and trial courts holding that sentencing statutes patterned in the same manner as Section 9718 are non-severable and void. *See, e.g., Commonwealth v. Wiley,* 633 Pa. 202, 124 A.3d 735 (2015) (*per curiam* ); *Commonwealth v. Peres,* 632 Pa. 615, 121 A.3d 983 (2015) (*per curiam* ); *Commonwealth v. Guzman,* 632 Pa. 621, 121 A.3d 986 (2015) (*per curiam* ).

Next, Appellee notes that Section 9718(a) applies to convictions for not only IDSI, but also twenty-one different underlying offenses as defined by multiple criminal-law statutes, and only in one such permutation is the triggering fact also an element of the underlying offense. Thus, Appellee regards the Commonwealth's present legal position as one of very limited application, and he maintains that all other applications of Section 9718(a) are "indistinguishably unconstitutionally void" under *Hopkins.* Brief for Appellee at 12.

As to the Commonwealth's and PDAA's position that a mandatory minimum sentence can be upheld in the absence of a valid enabling statute, Appellee finds such position to be untenable. According to Appellee, "[i]n the absence of a mandatory minimum sentencing statute is a court supposed to make up its own mandatory minimum sentence or impose the one that used to exist in the now unenforceable voided statute?" Brief for Appellee at 15 n. 4. To the contrary, it is Appellee's core position that there simply can be no mandatory minimum sentence without valid statutory authorization. For this proposition, Appellee draws support from a line of Superior Court cases holding that unconstitutional statutes are of no effect. *See* Brief for Appellee at 15–16 (citing *Commonwealth v. Leverette,* 911 A.2d 998, 1001 (Pa.Super.2006) ("If no statutory authorization exists for a particular sentence, that sentence is illegal and subject to correction."); *Commonwealth v. Michuck,* 454 Pa.Super. 594, 686 A.2d 403, 407 (1996) ("An unconstitutional statute is ineffective for any purpose" and a "court does not have power to enforce a law which is no longer valid.")).

Appellee also explains that in *Commonwealth v. Williams*, 557 Pa. 285, 733 A.2d 593 (1999), after determining that a statutory presumption in determining status as a sexually violent predator was unconstitutional and not severable, this Court simply struck all relevant provisions of the statute related to sexually violent predators. *See id.* at 312–13 & n. 18, 733 A.2d at 608 & n. 18. Likewise, Appellee argues, the courts are not entitled to substitute their own procedures for those that are clearly prescribed by the Legislature in Section 9718(c) and which contravene *Alleyne*. To the extent that the sentencing court merely acceded to the jury's finding rather than performing its statutory duty to engage in fact-finding, Appellee believes that such procedure is "entirely contrary to those unambiguously intended by the Legislature" and "is the antithesis of the court's appropriate role." Brief for Appellee at 20; *cf. Commonwealth v. Fennell*, 105 A.3d 13, 20 (Pa.Super.2014) (reaffirming that creating any new procedure for imposing a mandatory minimum sentence to supplant statutes invalidated by *Alleyne* was a matter "solely within the province of the legislature"). According to Appellee, reinstatement of his mandatorily-imposed minimum sentence would be tantamount to the same sort of rewriting of a statute, and transformation of legislative sentencing commands, that was eschewed in *Hopkins*. *See Hopkins*, 632 Pa. at 59–60, 117 A.3d at 261.

In the broadest plane, Appellee maintains that statutes violating *Alleyne* in the manner discussed in *Hopkins* are facially void, and no minimum sentence may be sanctioned that was imposed under them.

Appellee's *amicus*, the Defender Association of Philadelphia, clarifies that, conceptually, per *Alleyne*, Section 9718 must be viewed as a separate and distinct offense from the IDSI statute. *See Alleyne*, —— U.S. at ——, 133 S.Ct. at 2161 (couching an at-law enhancement requirement predicated upon a particular fact as "a new, aggravated crime"). The Association recognizes the anomaly driving the Commonwealth's arguments for divergence from *Hopkins*, in that Section 9718(c) is flatly incorrect in its pronouncement that

the age factor is not an element of the offense. The *amicus*, however, does not accept the notion that this incongruity relieves sentencing courts from compliance with their express statutory responsibility to undertake judicial fact-finding. Because, under *Alleyne*, the IDSI crime and the Section 9718(a)(1) crime are now separate offenses, the Defender Association asserts that each requires independent fact-finding by separate fact-finders, per the express legislative command. *See* 42 Pa.C.S. § 9718(c). In the Association's estimation, abstract notions of collateral estoppel—discussed by neither the Commonwealth nor PDAA but which appear to be implicit in their arguments—cannot negate or displace the sentencing court's express statutory responsibility. *See* Brief for the Defender Ass'n of Phila. at 13 ("What the jury may have found in relation to the IDSI [statute] does not supplant the trial court's Section 9718(c) statutorily required fact-finding responsibilities."); *id.* at 11–12 (citing *State v. Allen*, 423 Md. 208, 31 A.3d 476, 483 (2011), for the proposition that collateral estoppel may not be used against a criminal defendant).

The Defender Association does not specifically contest the jury's finding as to the victim's age in this case on its merits. Nevertheless, the Association observes that this factor may be legitimately in dispute in other cases, such as where the victim emigrates from a foreign country and arrives without a birth certificate or other official or definitive records. In any event, *amicus* regards the issue presented in this case as a structural one—Section 9718(c) mandates unconstitutional non-elemental status and judicial fact-finding; this Court held in *Hopkins* that such provisions were non-severable; and, thus, Section 9718 must be reevaluated by the Legislature, not reformulated or skirted by the judiciary.

In terms of harmless error, it is the position of the Defender Association that harmless-error review is inappropriate where a mandatory minimum sentence is imposed under a statute that is itself unconstitutional and unenforceable. *See* Brief for *Amicus* Defender Ass'n of Phila. at 14 ("The harmlessness of any procedural infirmity does not bring back to life the

constitutional[ly] dead statute."); *accord Fennell,* 105 A.3d at 19–20 n. 5 ("[O]nce the Court concludes that the subsections cannot be severed and must all be struck down, there is no statutorily authorized sentence upon which a harmless error analysis may be applied." (citing *Commonwealth v. Rivera,* 95 A.3d 913, 915 (Pa.Super.2014), for the proposition that "[i]f no statutory authorization exists for a particular sentence, that sentence is illegal and subject to correction")). While recognizing that the Commonwealth and PDAA have cited a number of cases suggesting that *Apprendi*-based errors can be harmless, *amicus* relates that none of these decisions involved a scenario in which the harmless-error determination "reanimate[d] or [brought] back to life a statute that was found to be facially unconstitutional and unenforceable absent the harmless error." Brief for *Amicus* Defender Ass'n of Phila. at 15.

## II. Discussion

### A. Legality of Sentencing

We begin our consideration of the above presentations with the matter of *sua sponte* appellate review. Appeal has been allowed in *Commonwealth v. Barnes,* 632 Pa. 650, 122 A.3d 1034 (2015) (*per curiam*), to address the question of whether an *Alleyne* violation implicates the legality of a sentence and thus renders a challenge non-waivable. Particularly since the Commonwealth, in the role of the appellant in the present case, has not addressed the relevant line of decisions, we defer deeper consideration of the waiver question to *Barnes.*[3] For the present, it is sufficient to observe that this Court has previously found that an asserted *Apprendi*-line violation im-

---

**3.** In his dissent, Justice Dougherty expresses a preference for the present case to be held pending *Barnes.* At this juncture, however, *Barnes* is only midway through the briefing stage. Moreover, unlike this case, the *Barnes* appeal does not involve the anomaly per which the Legislature's apparent misapprehension concerning offense elements serves as the Commonwealth's justification for disregarding the statute's unconstitutional directives to judicial officers.

Throughout his opinion, Justice Dougherty repeatedly characterizes the application of *Alleyne* in the present scenario as "retroactive" or "retrospective," without recognizing that *Alleyne* was decided months *before* the issuance of the dispositive sentencing order under review in this case.

plicated the legality of a sentence, *see Commonwealth v. Aponte*, 579 Pa. 246, 250–51 n. 1, 855 A.2d 800, 802–03 n. 1 (2004); *accord Commonwealth v. Gordon*, 596 Pa. 231, 234, 942 A.2d 174, 175 (2007) ("It seems to be a settled question in Pennsylvania that *Apprendi*-based challenges raise questions related to the legality of a sentence[.]"), and that legality-of-sentence claims are not subject to the traditional waiver doctrine. *See supra* note 2.[4]

## B. *Alleyne*'s Application

■ On the merits, we reaffirm our decision in *Hopkins* in all material respects and conclude that it applies here. Initially, as should be apparent from the above, we differ with the Commonwealth's position that Section 9718 does not require judicial fact-finding and that Section 9718(a), standing alone, is all that is required to impose the mandatory minimum sentence. To the contrary, Section 9718 does plainly and explicitly require judicial fact-finding in its subsection (c). *See* 42

4. In concurrence, Justice Baer advocates a broader approach, relating that "a majority of justices in *Foster* agreed that a challenge to the application of a mandatory minimum sentence was not waivable," and that the division among Justices involved the reasoning only. Concurring Opinion, at 57–58, 140 A.3d at 663. To clarify, what was at issue in *Foster* was a *particular, discrete* challenge to a mandatory minimum sentence, namely, one grounded in a longstanding judicial misreading of the terms of the relevant sentencing provision. *See Foster*, 609 Pa. at 505, 17 A.3d at 334 (Opinion Announcing the Judgment of the Court); *see also Commonwealth v. Dickson*, 591 Pa. 364, 372–74, 918 A.2d 95, 100–01 (2007) (elaborating on the issue of statutory interpretation involved). While the Court unanimously determined that such specific challenge could be vindicated in spite of lapses in issue preservation, it is important to recognize that a majority of Justices disagreed with the position advanced in the lead opinion that *all* challenges associated with the application of mandatory minimum sentences should be deemed non-waivable. *See Foster*, 609 Pa. at 526–27, 17 A.3d at 347 (Castille, C.J., concurring, joined by Orie Melvin, J.); *id.* at 539–41, 17 A.3d at 355–56 (Saylor, J., concurring); *id.* at 541–42, 17 A.3d at 356–57 (Eakin, J., concurring, joined by Castille, C.J.).

Certainly, Justice Baer's inclination to maintain the bright-line approach that he advocated from a minority position in *Foster* is understandable. From our perspective, however, it is preferable for the Court to revisit this controversial area of the law, in which sharp divisions previously have arisen and been maintained, in a context in which the competing positions are better developed by the parties in the first instance.

Pa.C.S. § 9718(c) ("The applicability of this section shall be determined at sentencing ... by a preponderance of the evidence."). Moreover, since subsection (c) is integral to the statute, Section 9718(a) does not stand alone. *See id.*

Similarly, we regard the suggestions by the Commonwealth and its *amicus* that Section 9718(c) can be deemed preempted, moot, dormant, or irrelevant—or can be otherwise disregarded or overlooked—to be tantamount to severance. The severance doctrine is the appropriate mechanism for testing whether some provisions of an otherwise unconstitutional statute may stand. *See, e.g., Hopkins,* 632 Pa. at 55–62, 117 A.3d at 259–62 (applying the severance doctrine in determining "whether the statute can survive without [unconstitutionally] invalid provisions"). Accordingly, in our considered judgment, Section 9718 rises or falls based on the application of such principles, and, based on their application in *Hopkins,* it is the latter outcome which must prevail. We also agree with Appellee and his *amicus* that a sentence based on an unconstitutional statute that is incapable of severance is void. *Accord Commonwealth v. Armao,* 446 Pa. 325, 337–38 & n. 9, 286 A.2d 626, 632 & n. 9 (1972) (indicating, with reference to an unconstitutional non-severable statute, that "the whole statutory scheme is invalid on its face"); *Michuck,* 686 A.2d at 407 ("An unconstitutional statute is ineffective for any purpose."). *See generally* 16 C.J.S. CONSTITUTIONAL LAW § 265 (2016) (depicting the general rule that an unconstitutional, non-severable statute is "not a law, has no existence, is a nullity, or has no force or effect or is inoperative" (footnotes omitted)).

Although the anomaly in Section 9718—*i.e.,* the incorrect specification that the age-of-victim factor is not an element of a Section 3123(a)(7) IDSI crime—injects a conceptual wrinkle into this case, it does not alter our core assessment. In this regard, we agree with Appellee and his *amicus* that, under *Alleyne,* Section 9718 must be treated as creating a "distinct and aggravated crime," *Alleyne,* —— U.S. at ——, 133 S.Ct. at 2163; that the statute's directive for judicial fact-finding attaches to that aggravated crime notwithstanding a jury ver-

dict; and that sentencing judges are not free to disregard such explicit legislative mandates by substituting their own procedures. *Accord Fennell*, 105 A.3d at 20. Accordingly, although the jury at Appellee's trial plainly decided that the victim was under sixteen years of age, the sentencing court was bound to make its own determination at sentencing, *see* 42 Pa.C.S. § 9718(c), but it could not do so in a manner consistent with the Sixth Amendment to the United States Constitution, on account of *Alleyne*. *See Alleyne*, —— U.S. at ——, 133 S.Ct. at 2163–64 (disapproving a judicial finding relative to a mandatory minimum sentence).[5]

 We are also unable to deem the violation inherent in the application of a sentencing statute that is unconstitutional on its own non-severable terms to be harmless. On this subject, we reject PDAA's contention that Pennsylvania courts should be completely unconcerned with the unconstitutional provisions of mandatory minimum sentencing statutes, so long as constitutional requirements can be said to have been satisfied in the abstract. Although we realize that the Supreme Court of the United States and other courts have found *Apprendi*-based errors to be harmless in various cases, which are ably cited by the Commonwealth and its *amicus*, none of these concerned a scenario in which the underlying sentencing statute was itself found to be invalid and non-severable.[6]

5. The dissent authored by Justice Todd references no authority for its proposition that a sentencing court may treat a statutorily-prescribed fact-finding duty assigned to a judicial officer as merely a *"pro forma* act." Dissenting Opinion, at 66–67, 140 A.3d at 669.

 Obviously, we also do not share the dissent's perspective that our approach of squarely addressing the express, direct, and specific challenge to the underlying sentencing provision presented by Appellee is "myopic[ ]," "inexplicabl[e]," or otherwise misdirected. Dissenting Opinion, at 59, 67–68, 140 A.3d at 664–65, 669–70. Indeed, we believe that our analysis is straightforward and rests on far firmer foundation than the dissent's position that small segments of a statute that is otherwise irreparably unconstitutional on its terms should be preserved on account of an anomaly, and despite suffering from the same, integral, explicit statutory directive for sentencing courts to perform what is now unconstitutional judicial fact finding.

6. The dissents' alternative approach favoring a finding of harmless error would sanction a residual longevity in small segments of an

Notably, as well, from the federal perspective at least, matters of state law are integral to determining whether, and to what extent, a state statute ultimately may survive an *Apprendi* or *Alleyne* challenge. *See, e.g., Leavitt v. Jane L.,* 518 U.S. 137, 139, 116 S.Ct. 2068, 2069, 135 L.Ed.2d 443 (1996) (*per curiam*) ("Severability is of course a matter of state law."). Accordingly, it should come as no surprise that the federal courts frequently focus on the particular application at hand rather than structural problems with an underlying state legislative enactment. From the state level, however, we have not been free to avoid the essential inquiry connected with the viability of Section 9718 and other similarly patterned statutes. *See, e.g., Hopkins,* 632 Pa. at 52–62, 117 A.3d at 257–63.

We are not unsympathetic to the plight of the Commonwealth in *Alleyne*'s wake, given the volume of the mandatory minimum sentences that must be stricken, and the scale of the task of resentencing. We also appreciate that, in enacting the mandatory minimum sentencing regime, the General Assembly had acted in good faith reliance on the previous jurisprudence of the Supreme Court of the United States, which was discarded by that Court in *Alleyne*. Nevertheless, new constitutional rules of *Alleyne*'s magnitude often have unavoidable, wide-scale consequences. Against the above backdrop, we believe that the Commonwealth also should appreciate the judiciary's position, in that our ability to curtail *Alleyne*'s ramifications is limited according to our subordinate role within the federal-state hierarchy, as well as our co-equal

unseverable statute requiring unconstitutional actions on the part of judicial officers. Along these lines, such a finding would effectively give credence to the principle advanced by the PDAA that "applying a statute in a manner that is constitutionally erroneous but harmless is at least one circumstance in which the statute continues to be valid." Brief for *Amicus* PDAA at 10.

From our perspective, however, the prospect of enforcing a statute containing unseverable, unconstitutional directives to judicial officers here and potentially into perpetuity on the theory that such enforcement will be harmless on an ongoing basis is simply untenable. Because *Alleyne* invalidates material requirements of this statute, and because those provisions are non-severable per *Hopkins,* the statute simply cannot be enforced by the judiciary in any respect.

status in a Commonwealth where the legislative power is allocated to another branch.

■ Harkening back to *Hopkins*, we reiterate that it is not an appropriate function of the judiciary to create new aggravated crimes, via severance or otherwise. Transformation of a sentencing factor which the Legislature has specifically mandated "shall not be an element of the crime" into an offense element is simply beyond our constitutionally prescribed authority and purview. *Accord Hopkins*, 632 Pa. at 60–62, 117 A.3d at 262.[7]

In summary, we reaffirm *Hopkins* and find that Section 9718 is irremediably unconstitutional on its face, non-severable, and void.

The order of the Superior Court is affirmed.

Justices BAER, DONOHUE and WECHT join the opinion with respect to Parts I and II(B). Justice DONOHUE joins the opinion with respect to Part II(A).

7. In response to Justice Todd's portrayal of a "windfall" arising from our present holding, *see* Dissenting Opinion, at 69–70, 140 A.3d at 670–71, we observe that Appellant stands convicted of three counts of felonies of the first degree, four counts of felonies of the second degree, and one count of a felony of the third degree. Given that the entire sentencing plan must be reevaluated in instances in which a defendant challenges one of several interdependent sentences, *see Commonwealth v. Goldhammer*, 512 Pa. 587, 593, 517 A.2d 1280, 1283 (1986), on remand Appellee may in fact receive exactly the same aggregate term of sentence that previously was imposed. Along these lines, Appellant will again be exposed to a potential maximum aggregate sentence—exclusive of the mandatory minimum sentencing provisions—of up to 107 years' imprisonment. *See* 18 Pa.C.S. § 1103 (delineating the 20-year maximum sentence for felonies of the first degree, the 10-year maximum sentence for felonies of the second degree, and the seven-year maximum sentence for felonies of the third degree). Furthermore, should Appellant somehow garner a "windfall" from the sentencing court, the Commonwealth has the ability to seek review of the substantial question that obviously would be presented in the Superior Court. *See* 42 Pa.C.S. § 9781(b).

Every day, the above individualized, discretionary sentencing regime operates to facilitate fair and appropriate sentencing for criminal defendants across Pennsylvania. Thus, we do not find the dissent's speculative depiction of a windfall to be well taken.

Justice BAER files a concurring opinion, joined by Justice WECHT.

Justice TODD files a dissenting opinion, joined by Justice DOUGHERTY.

Justice DOUGHERTY files a dissenting opinion.

Justice BAER, concurring.

I join the learned majority opinion in full with the exception of its discussion of whether a challenge to a mandatory minimum sentence based on *Alleyne v. United States,* —— U.S. ——, 133 S.Ct. 2151, 186 L.Ed.2d 314 (2013), implicates legality of sentence and is therefore non-waivable. I believe this to be a threshold issue that we should decide before proceeding to the merits of the Commonwealth's appeal. In my view, the fact that the Commonwealth fails to address the correct line of cases pertinent to this threshold issue does not prevent us from deciding it. If *Alleyne* challenges are waivable, then we would be constrained to reverse the Superior Court's action in addressing the *Alleyne* challenge *sua sponte* because Appellee failed to preserve the issue at the first instance. Rather than defer the issue, I would hold that a challenge to a mandatory minimum sentence based on *Alleyne* does implicate legality and is, thus, non-waivable.

As the majority notes, this Court addressed whether challenges to a mandatory minimum sentence were waivable in *Commonwealth v. Foster,* 609 Pa. 502, 17 A.3d 332 (2011), which resulted in a plurality opinion. However, a majority of justices in *Foster* agreed that a challenge to the application of a mandatory minimum sentence was not waivable. The split among the Court involved the reasoning as to why the issue was non-waivable.

In my expression in *Foster,* I concluded that because a sentencing court loses its authority to exercise discretion when a mandatory minimum sentence applies, the question of the propriety of applying a mandatory minimum sentencing provision implicates legality. Similarly, several panels of the Superior Court have determined that an *Alleyne* challenge impli-

cates legality of sentence and therefore is non-waivable. *See, e.g., Commonwealth v. Watley,* 81 A.3d 108, 118 (Pa.Super.2013) (*en banc*) (citing *Foster* for the proposition that "[a]pplication of a mandatory minimum sentence gives rise to illegal sentence concerns," and thus a challenge to such is non-waivable); *Commonwealth v. Hopkins,* 67 A.3d 817, 821 (Pa.Super.2013) ("As a general rule, a challenge to the application of a mandatory minimum sentence is a non-waivable challenge to the legality of sentence." (internal quotations omitted)); *Commonwealth v. Newman,* 99 A.3d 86, 90 (Pa.Super.2014) (*en banc*) (same).

Accordingly, I would simply decide the threshold waiver issue in conformity with the view I expressed in *Foster* as well as that taken by the Superior Court and find that a challenge based on *Alleyne* involves the legality of one's sentence and is not waivable. Therefore, the fact that Appellee did not preserve the issue does not preclude him from obtaining the relief afforded to him by the Superior Court, which the majority opinion skillfully and correctly affirms.

Justice WECHT joins this concurring opinion.

Justice TODD, dissenting.

The United States Supreme Court in *Alleyne v. United States*[1] specified that, to satisfy the jury trial right in the Sixth Amendment to the United States Constitution, any *fact* that triggers a mandatory minimum sentence must be (1) stated in the information; (2) an element of the offense; (3) found by a jury; and (4) found beyond a reasonable doubt. Here, the *fact* that triggered the imposition of Appellee Matthew Wolfe's mandatory minimum sentence—that the victim was under the age of 16—was (1) stated in the information; (2) an element of the offense; (3) found by a jury; and (4) found beyond a reasonable doubt. Accordingly, pursuant to *Alleyne,* Appellee's rights under the Sixth Amendment have been satisfied, he has suffered no constitutional deprivation, and, thus, in my view, he is not entitled to relief. Having declined to engage in

1. —— U.S. ——, 133 S.Ct. 2151, 186 L.Ed.2d 314 (2013).

this threshold assessment of constitutional deprivation before considering the impact of our decision in *Commonwealth v. Hopkins*[2] the majority has, in my respectful view, improperly analyzed a foundational aspect of this constitutional question. As the *Alleyne* Court explained, "the essential Sixth Amendment inquiry is whether a fact is an element of the crime." *Alleyne,* 133 S.Ct. at 2162. Inexplicably, in striving to apply *Alleyne,* which is founded on the Sixth Amendment *right to a jury trial,* the majority ascribes no import to Appellee's *actual jury trial,* instead myopically focusing on the sentencing statute. And, if the majority deems *Hopkins* to dictate this focus, then it is incumbent upon this Court to clarify *Hopkins,* but not to lay this case at the feet of *Alleyne.*

Moreover, even assuming, *arguendo,* as posited by the majority, that Appellee's sentence was imposed pursuant to a constitutionally violative statute, imposition of the sentence in this case, where the jury found the triggering fact by a reasonable doubt, is clearly harmless, and, thus, Appellee should not receive the windfall of a new sentencing hearing. My reasoning follows.

As noted by the majority, on October 1, 2013, the Court of Common Pleas of Lancaster County imposed concurrent sentences for all of the crimes of which Appellee was convicted, resulting in an aggregate sentence of 10 to 20 years imprisonment. Relevant to this appeal, for each IDSI count, the trial court imposed a mandatory minimum sentence of 10 years, pursuant to 42 Pa.C.S. § 9718(a)(1).

Specifically, the criminal offense which led to Appellee's conviction for IDSI (victim less than 16 years of age) provides: "A person commits a felony of the first degree when the person engages in deviate sexual intercourse with a complainant: ... who is less than 16 years of age and the person is four or more years older than the complainant and the complainant and person are not married to each other." 18 Pa.C.S. § 3123(a)(7). Based upon this conviction, the trial court imposed upon Appellee the mandatory minimum sen-

2. 117 A.3d 247 (Pa.2015).

tence of ten years pursuant to 42 Pa.C.S. § 9718(a)(1), which provides: "A person convicted of the following offenses when the victim is less than 16 years of age shall be sentenced to a mandatory term of imprisonment as follows: ... 18 Pa.C.S. § 3123 (relating to involuntary deviate sexual intercourse)— not less than ten years." 42 Pa.C.S. § 9718(a)(1). Thus, in these unusual circumstances, the fact triggering the imposition of the mandatory minimum sentence under Section 9718(a)(1) is the same fact that is necessary for a conviction under Section 3123(a)(7).[3] To properly analyze the issue in this appeal, one must first understand the historical underpinnings of this area of the law.

The Sixth Amendment to the United States Constitution, made applicable to the States via the Fourteenth Amendment, provides that an accused enjoys the right to trial by an impartial jury. U.S. Const. amend. VI. The United States Supreme Court's Sixth Amendment cases "have focused on when a given finding of fact is required to make a defendant legally eligible for a more severe penalty." *Peugh v. United States*, 569 U.S. 530, 133 S.Ct. 2072, 2088, 186 L.Ed.2d 84 (2013).

While the Constitution mandates that a criminal conviction must "rest upon a jury determination that the defendant is guilty of every element of the crime" in question beyond a

**3.** While the triggering fact for the mandatory minimum sentence under Section 9718 is, in this case, the same fact that is an element of the underlying criminal offense at Section 3123(a)(7), the vast majority of other criminal offenses referred to in Section 9718 follow the factual situation which gave rise to *Alleyne*, in that the fact that triggers the mandatory minimum sentence is independent of the facts constituting the elements of the underlying criminal offense. Indeed, of the 21 criminal offenses referenced in Section 9718(a)(1) and (2), only three, 18 Pa.C.S. § 3123(a)(7), (b) and (c), subsume the same factual predicate as that required for imposition of the mandatory minimum sentence. Additionally, I note that the convictions themselves of four offenses, 18 Pa.C.S. § 3121(c) and (d), 18 Pa.C.S. § 3125(a)(7), and 18 Pa.C.S. § 3125(b), serve as the necessary trigger for the mandatory minimum sentences provided in Section 9718(a)(3). Respecting this last situation, the issue of the validity under *Alleyne* of a mandatory minimum sentence imposed simply on the basis of the conviction of an underlying crime is raised in a petition for allowance of appeal that is currently before our Court in *Commonwealth v. Resto*, 774 MAL 2015.

reasonable doubt, *United States v. Gaudin*, 515 U.S. 506, 510, 115 S.Ct. 2310, 132 L.Ed.2d 444 (1995), early United States Supreme Court caselaw permitted a judge to determine "sentencing factors" without violating a defendant's right to trial by jury. *See McMillan v. Pennsylvania*, 477 U.S. 79, 93, 106 S.Ct. 2411, 91 L.Ed.2d 67 (1986). In *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), however, the high Court overruled *McMillan* and held that any fact that increases a defendant's sentence "beyond the prescribed statutory maximum" is an element for the jury, regardless of the legislature's designation. *Apprendi*, 530 U.S. at 490, 120 S.Ct. 2348.

While *Apprendi* spoke to increasing a statutory *maximum* sentence, eleven years later, in *Alleyne*, the Supreme Court concluded that "*Apprendi* applies with equal force to facts increasing [a] mandatory *minimum* [sentence]." *Alleyne*, 133 S.Ct. at 2160 (emphasis added). In that case, in an opinion authored by Justice Clarence Thomas, the Supreme Court explained that, under the Sixth Amendment, "[a]ny fact that, by law, increases the penalty for a crime is an 'element' that must be submitted to the jury and found beyond a reasonable doubt." *Alleyne*, 133 S.Ct. at 2155. As a mandatory minimum sentence increases the penalty for a crime, the Court extended this principle and held that any fact that increases the mandatory minimum is an "element" that must be submitted to the jury. *Id.* The trial judge in *Alleyne* had found by a preponderance of the evidence that the defendant "brandish[ed]" a weapon, which increased the penalty to which *Alleyne* was subjected. As such, the high Court determined that the fact triggering the mandatory minimum sentence was an element which had to be determined by the jury beyond a reasonable doubt; accordingly, it remanded the matter for resentencing consistent with the jury's verdict. *Id.* at 2163–64.[4]

4. Although focusing on jury findings, the Supreme Court's decision in *Alleyne* gave no indication that its constitutional calculus would be any different if a judge, rather than a jury, was the fact finder of guilt.

In reaching its conclusion, the Court conceptualized this Sixth Amendment right in these circumstances by offering that the "facts increasing the legally prescribed floor *aggravate* the punishment," and, therefore, "the core crime and the fact triggering the mandatory minimum sentence together constitute a new, aggravated crime, each element of which must be submitted to the jury." *Id.* at 2161 (emphasis original); *see also id.* at 2162 ("When a finding of fact alters the legally prescribed punishment so as to aggravate it, the fact necessarily forms a constituent part of a new offense and must be submitted to the jury."). With respect to principles of notice, the Court further opined that "[d]efining facts that increase a mandatory statutory minimum to be part of the substantive offense enables the defendant to predict the legally applicable penalty from the face of the indictment" and "preserves the historic role of the jury as an intermediary between the State and criminal defendants." *Id.* at 2161. Accordingly, where the fact which triggered the mandatory minimum sentence *was not an element of the underlying criminal offense,* the Court conceptualized the creation of a new aggravated offense to explain the constitutional import of the independent triggering fact leading to the imposition of the mandatory minimum sentence for purposes of Sixth Amendment protections. Thus, it is this fact-based inquiry underlying the constitutional protections recognized in *Alleyne* that is the proper focus of a Sixth Amendment analysis. As noted above, "the essential Sixth Amendment inquiry is whether a fact is an element of the crime." *Alleyne,* 133 S.Ct. at 2162.

Initially, in the matter *sub judice,* and unlike in *Alleyne,* the fact which triggered Appellee's mandatory minimum sentence was an element of the underlying criminal offense. Thus, before us is a foundationally distinct situation than that which served as the basis of the constitutional rights recognized by the *Alleyne* Court, as the engine that drove the *Alleyne* decision—an extra-offense fact necessary to the imposition of mandatory minimum sentencing—is absent. Accordingly, the sentencing at issue *sub judice* is legally distinct from the

*Alleyne* scenario. Indeed, considering the underlying factors that prompted the constitutional rights recognized in *Alleyne* and applying them to this matter, in these limited circumstances, Appellee has received the benefit of every constitutional right recognized by the high Court in *Alleyne*.

First, *Alleyne* requires that a fact which increases the floor of a sentence be considered an "element" of the overall crime, and must, therefore, be found by a jury beyond a reasonable doubt. That is exactly what occurred in this case. Here, the relevant element of the offense required that the victim be less than 16 years old, 18 Pa.C.S. § 3123(a)(7)—precisely the same factual determination necessary to impose the mandatory minimum sentence under 18 Pa.C.S. § 9718. Thus, the triggering fact (the *Alleyne* "element") required to impose the mandatory minimum sentence was, by definition, an element of the underlying offense which the Commonwealth had to prove, and did prove, to a jury beyond a reasonable doubt.

Second, regarding notice, the *Alleyne* Court emphasized that the core criminal offense and the *fact* triggering the mandatory minimum sentence, together, constituted a new aggravated crime and the triggering fact must be charged in the indictment as an element of the new crime. The high Court explained that doing so would enable a defendant to predict the legally applicable penalty from the face of the indictment.[5] Here, the triggering fact was charged in the indictment as it was an element of the crime and, thus, Appellee knew from the indictment the applicable penalty, including the possibility of an enhanced minimum sentence. Contrary to the majority's position, because the fact triggering the mandatory minimum sentence was not an extra or independent fact, but a fact already part of an element of the underlying criminal offense, no "new, aggravated crime" was created as envisioned by the *Alleyne* Court. *Alleyne*, 133

---

5. The critical nature of this notice-giving function is in some doubt given that *Apprendi*-type sentencing errors have been found to be susceptible to a harmless error analysis. *See infra.*

S.Ct. at 2161. As a result, *Alleyne's* expressed concern about notice was satisfied in this case.[6]

My determination that Appellee suffered no constitutional deprivation under *Alleyne* must nevertheless be reconciled with the seemingly categorical language of our recent decision in *Hopkins*, which I authored. Indeed, at first blush, there appears to be tension between a conclusion that Appellee's constitutional rights under *Alleyne* were preserved, and the fact that Appellee's mandatory minimum sentence was imposed pursuant to Section 42 Pa.C.S. § 9718(a)(1)—a statute similar in structure to 18 Pa.C.S. § 6317, which we found in *Hopkins* to be constitutionally infirm under *Alleyne*. Nevertheless, upon closer scrutiny, there is no such tension in these circumstances.

In *Hopkins*, the Commonwealth sought the mandatory minimum sentence under 18 Pa.C.S. § 6317, which imposes a mandatory minimum sentence of two years imprisonment upon a defendant for a conviction of delivery or possession with intent to deliver a controlled substance where the offense occurs within 1,000 feet of, *inter alia*, a school. *Prior to sentencing*, the trial court declared Section 6317 to be unconstitutional in its entirety, finding the statute placed the fact-

6. To the degree the majority suggests that notice of the *decision to proceed* under Section 9718 was required under *Alleyne* and *Hopkins*, I disagree with such suggestion. Majority Opinion at 41, 140 A.3d at 653 ("the absence of a requirement for pretrial notice of aggravation is in substantial tension with *Alleyne*"). All that is required under *Alleyne* is that *the fact* that triggers the mandatory minimum sentence be an element of the substantive offense so as to give notice of the legally applicable penalty. *Alleyne*, 133 S.Ct. at 2161 ("[d]efining facts that increase a mandatory statutory minimum to be part of the substantive offense enables the defendant to predict the legally applicable penalty from the face of the indictment"). As described above, Appellee had notice from the indictment of the fact that, to be convicted under Section 3123(a)(7), the jury had to find beyond a reasonable doubt that Appellee engaged in deviate sexual intercourse with the victim who was less than 16 years of age, that the defendant was 4 or more years older than the victim, and that the defendant and the victim were not married. 18 Pa.C.S. § 3123(a)(7). The trigger for imposition of the mandatory minimum sentence under Section 9718(a)(1) was a conviction under Section 3123(a)(7), where the victim was less than 16 years of age. 42 Pa.C.S. § 9718(a)(1). Thus, Appellee could have predicted

finding function of whether the crime occurred within 1,000 feet of a school in the hands of the sentencing court and allowed such fact to be found by the preponderance of the evidence. The Commonwealth in *Hopkins* conceded that certain provisions of Section 6317 were violative of *Alleyne*, and, thus, unconstitutional, but believed that its remaining provisions were severable and remained viable, or that special interrogatories could cure the statute's constitutional infirmity. Our Court agreed that, indeed, various provisions of the mandatory minimum sentencing statute were violative of *Alleyne*, but determined that the remaining constitutional provisions were not severable, as, standing alone, they were incomplete and incapable of vindication in accord with legislative intent. Thus, based upon the issue before the Court, we affirmed the trial court's determination, finding Section 6317 to be constitutionally deficient, as it failed to provide the due process and Sixth Amendment rights accorded a defendant under *Alleyne*.

All our decisions, including those involving constitutional rights, must be read against their facts and against the challenge presented. *Commonwealth v. Hale*, 633 Pa. 734, 128 A.3d 781, 785 n. 6 (2015). In particular, in *Hopkins*, we did not address sentencing provisions such as Section 9718 which, while structurally the same as Section 6317, apply to crimes critically distinct from the one at issue in *Hopkins*.[7] That is, we were not presented in *Hopkins* with the fortuity of a mandatory sentence triggered by a sentencing fact where that same fact was nonetheless an element of the offense to which the mandatory sentencing statute applied. Rather, at issue in *Hopkins* was an offense which, unlike here, did not

the legally applicable penalty from the face of the indictment, thereby satisfying *Alleyne*.

7. As indicated above, the underlying offense in *Hopkins* was a conviction for possession with intent to deliver a controlled substance, 35 P.S. § 780–113(a)(30), which does not contain as an element the situs of the crime, and the mandatory minimum sentencing statute which imposed an enhanced sentence if the delivery of drugs supporting the conviction occurred within 1,000 feet of, *inter alia*, a school. 18 Pa.C.S. § 6317. Further, the only other offense for which Section 6317's mandatory minimum sentence was applicable was 35 P.S. § 780–113(a)(14), which also contained no reference to location.

contain as an element the fact triggering the enhanced mandatory minimum sentence—a classic *Alleyne* situation.

Importantly, *any* sentence imposed in *Hopkins* pursuant to 18 Pa.C.S. § 6317(a) would have been constitutionally infirm under *Alleyne* because the crime charged therein did not include as an element the sentencing fact triggering Section 6317's mandatory minimum sentence, and so would have resulted in a violation of *Alleyne's* proof and notice requirements. Moreover, we eschewed judicially creating a new aggravated offense that included the sentencing fact as an element of the crime, as that outcome was specifically forsworn by the legislature. *See* 18 Pa.C.S. § 6317(b) ("The provisions of this section shall not be an element of the crime."). Thus, we held that Section 6317 was infirm. Finally, as the trial court in *Hopkins* struck the mandatory minimum sentencing statute as violative of *Alleyne prior* to imposing any enhanced sentence, no harmless error analysis was raised or implicated in *Hopkins*.

By contrast, herein, Appellee was charged and convicted of an offense which includes as an element the sentencing fact triggering the mandatory minimum sentence in Section 9718—that is, to convict Appellee of 18 Pa.C.S. § 3123(a)(7), the jury had to find beyond a reasonable doubt that the victim was less than 16 years old. As a result, despite the existence of provisions in Section 9718 which are suspect under *Alleyne* and *Hopkins*, they do not manifest an *Alleyne* violation in this case. In other words, the structure of the criminal offense in this case ensures that *Alleyne's* mandates will be satisfied. That the judge presumably also found the triggering fact by a preponderance of the evidence per Section 9718—a *pro forma* act given the jury's finding the same fact beyond a reasonable doubt—is immaterial under *Alleyne;* indeed, the majority cites nothing to suggest the *Alleyne* Court was concerned about a judge making factual findings redundant to those of the jury. While we concluded in *Hopkins* that this "proof at sentencing" provision was not subject to severance in the circumstances presented in *Hopkins*, here, the mere existence of such a provision in the sentencing statute does not make a

sentence that was imposed in accord with *Alleyne* unconstitutional. The focus for purposes of *Alleyne* is not on the sentencing statute, but, rather, on whether a defendant has been denied his or her right to a trial by jury on the facts triggering a sentence. Here, in these circumstances, Appellee has not. In short, Appellee's mandatory minimum sentence was imposed by a trial court pursuant to the authority of Section 9718 in a manner that, in these circumstances, fully comports with *Alleyne*.[8]

Indeed, in my view, we did not intend to suggest in *Hopkins* that an *Alleyne* analysis of a mandatory minimum sentence may be conducted in a vacuum, without consideration of the elements of the underlying criminal offense of which the defendant was convicted. Further, in determining that the sentencing statute at issue in *Hopkins* failed to provide the protections mandated by *Alleyne*, we neither announced a categorical holding of facial unconstitutionality of all mandatory minimum statutes nor suggested that all mandatory minimum statutes were unconstitutional under all circumstances. Rather, the predicate in *Hopkins* was a mandatory minimum statute triggered by a factual determination not an element of the underlying crime.

Moreover, the majority misinterprets *Hopkins'* severability analysis. *See* Majority Opinion at 52–53, 140 A.3d at 660–61. A severability analysis is implicated only where a statute reveals a constitutional (or other) infirmity. In *Hopkins*, given the crime charged and the provisions of 18 Pa.C.S. § 6317, an *Alleyne* violation was manifest. By contrast, here, there is no *Alleyne* violation. As a result, there is no need to engage in any severability analysis regarding Section 9718. In essence, the approach taken by the majority "puts the cart before the horse"—finding Section 9718 to be non-severable and infirm without first identifying the constitutional violation to which Appellee was subjected. Moreover, whatever tension exists, as a matter of legislative intent, between the provisions

8. In comparison, as noted above, there are numerous crimes also triggering Section 9718's mandatory minimum sentences which arguably would result in a sentence violative of *Alleyne*. *See supra* note 3.

of Section 3123(a)(7) and Section 9718 need not be resolved in order to conclude that Appellee's sentence was constitutional.[9]

In my view, a challenge to a sentence or sentencing scheme based upon *Alleyne* must be considered in the context of the underlying criminal offense, as the basis for finding a violation under *Alleyne*, and, thus, *Hopkins*, is a mandatory minimum sentence triggered by a fact found not by a jury beyond a reasonable doubt and without prior notice. Yet, the majority finds Appellee is entitled to relief because, although Appellee's Sixth Amendment rights were preserved "in the abstract" given that a jury found beyond a reasonable doubt the charged element that the victim was less than 16 years old, *see* Majority Opinion at 53–54, 140 A.3d at 661, his Sixth Amendment jury trial rights were nonetheless impaired because a sentencing judge redundantly found this same fact by a lesser burden of proof. I can find no support in *Alleyne* for this analysis.

Finally, assuming *arguendo*, Section 9718 is infirm, while the majority rejects the application of a harmless error analysis, both state and federal courts which have considered this Sixth Amendment issue have embraced a harmless error analysis, and I find this case easily satisfies harmless error criteria. First, there is a strong presumption that constitutional errors permit a harmless error analysis. Based on its

**9.** More specifically, because the fact triggering the mandatory minimum sentence is already an element of the underlying crime, it is unnecessary to contemplate whether *Alleyne's* conceptualization of a distinct aggravated substantive offense would conflict with legislative intent, as we did in *Hopkins*, where the legislature specifically indicated that the fact triggering the mandatory minimum sentence was not to be to an element of a crime. *Cf. Hopkins*, 117 A.3d at 259. Again, the fact required for the mandatory minimum sentence is already part of the underlying offense which was required to be proven to a jury beyond a reasonable doubt. Likewise, we need not contemplate substituting procedures beyond those prescribed in the sentencing statute, or redrafting sentencing legislation. *Cf. id.* at 261 ("It is beyond our province to, in essence, rewrite Section 6317 to transform its sentencing commands, whether by utilizing special verdicts or otherwise, into a new substantive offense, contrary to the express legislative intent to the contrary."). As, in these admittedly unique circumstances, the existing sentencing legislation may be applied in a constitutional manner, there is no *Alleyne* violation. As such, contrary to the majority's approach, our decision in *Hopkins* does not necessitate a finding that the statute under which Appellee was sentenced is fatally invalid.

determination that *Apprendi* violations are subject to a harmless error analysis, *Washington v. Recuenco*, 548 U.S. 212, 218–22, 126 S.Ct. 2546, 165 L.Ed.2d 466 (2006) (finding a failure to submit a sentencing factor to the jury, like the failure to submit an element to the jury, is not structural and, thus, is subject to a harmless error analysis), and, as *Alleyne* is an extension of the *Apprendi* doctrine, the United States Supreme Court will most certainly apply a harmless error analysis to violations of *Alleyne*. Numerous state and federal courts have already done so. *See Lightfoot v. State*, 152 So.3d 445 (Ala.2013); *Arizona v. Lizardi*, 234 Ariz. 501, 323 P.3d 1152 (App.2014); *Britten v. State*, 181 So.3d 1215 (Fla.App. 2015); *State v. Willan*, 144 Ohio St.3d 94, 41 N.E.3d 366 (2015); *United States v. Harakaly*, 734 F.3d 88 (1st Cir.2013); *United States v. Lewis*, 802 F.3d 449 (3d Cir.2015); *United States v. Mack*, 729 F.3d 594 (6th Cir.2013); *United States v. Lara–Ruiz*, 721 F.3d 554 (8th Cir.2013); *United States v. Carr*, 761 F.3d 1068 (9th Cir.2014); *United States v. Payne*, 763 F.3d 1301 (11th Cir.2014). Indeed, certain of these decisions have embraced a broad harmless error analysis, finding any error to be harmless where a rational jury would have found the triggering fact in light of overwhelming evidence. *See, e.g., Britten; Willan; Harakaly; Mack; Payne.* Of course, assessment of the broadest harmless error approach is unnecessary here, where a jury *actually found* beyond a reasonable doubt the triggering fact.

Regardless, these tribunals' approach supports a determination that the imposition of a sentence in violation of *Alleyne* does not require resentencing in all circumstances. Indeed, the majority's rejection of a harmless error analysis will result in an undeserved windfall to certain defendants. This is especially true in the matter *sub judice,* as here, even accepting, *arguendo,* that the sentencing statute does not, by its terms, provide the protections announced in *Alleyne,* Appellee has received all that *Alleyne* requires. Accordingly, any error in sentencing was harmless. To sharpen the point, our Court has pending before it an appeal in which a conviction for the rape of a child, less than 13 years of age, 18 Pa.C.S. § 3121(c),

serves as the factual trigger for a mandatory minimum sentence of not less than 10 years imprisonment under Section 9718. 42 Pa.C.S. § 9718(a)(3); *see supra* note 3. Thus, a conviction of the offense itself is trigger for the mandatory minimum sentence. Yet, even in this most straightforward of cases, where the underlying conviction itself is the trigger for a mandatory minimum sentence, under the majority's approach, the defendant will argue entitlement to a new sentencing hearing. In my view, the majority's rejection of a harmless error analysis herein is inconsistent with the teachings of *Alleyne,* subsequent state and federal caselaw, and common sense.

Accordingly, for the above-stated reasons, I respectfully dissent.

Justice DOUGHERTY joins this dissenting opinion.

Justice DOUGHERTY, dissenting.

I respectfully dissent. Appellee was tried by a jury and found guilty on June 13, 2013; four days later, the United States Supreme Court, overruling decades of prior precedent, announced a new, non-retroactive constitutional rule in *Alleyne v. United States,* —— U.S. ——, 133 S.Ct. 2151, 186 L.Ed.2d 314 (2013). Appellee did not anticipate *Alleyne:* he raised no constitutional challenge to 42 Pa.C.S. § 9718, the statute exposing him to a mandatory minimum sentence, demanding that the age-of-victim fact exposing him to the mandatory sentence needed to be charged, presented to his jury, and found beyond a reasonable doubt, which is the extent of *Alleyne* 's constitutional command. Nor did appellee anticipate *Commonwealth v. Hopkins,* 117 A.3d 247 (Pa.2015): he raised no facial challenge to the statute, arguing that even though he had charging notice of the triggering fact and the fact would go to the jury for determination beyond a reasonable doubt, the statute was infected with a fatal Sixth Amendment flaw. Nor did appellee seek retroactive benefit of *Alleyne* 's new rule post-verdict or on direct appeal to the Superior Court, and he did not anticipate the rule in *Hopkins*

and seek to launch a retroactive facial challenge to the statute post-verdict or on appeal.

Instead, the Superior Court panel raised a retroactive facial constitutional challenge on appellee's behalf, under the guise that appellee's sentence was "illegal." The panel then decided the issue without input from the parties and afforded appellee retroactive relief. This approach allows for indulgence of a pretense that appellee actually launched a timely facial challenge to the statute. When a new constitutional rule applies in a globally retroactive fashion—such as the new rule in *Miller v. Alabama*, 567 U.S. 460, 132 S.Ct. 2455, 183 L.Ed.2d 407 (2012) (barring imposition of mandatory sentences of life without possibility of parole upon juvenile offenders), *deemed retroactive in Montgomery v. Louisiana*, —— U.S. ——, 136 S.Ct. 718, 193 L.Ed.2d 599 (2016)—it does not matter that there was no error when a case was tried. *Alleyne* is not a retroactive rule, and neither the trial court here, nor appellee's counsel, did anything wrong.

No doubt I retain a certain perspective when issues implicate the realities of trial practice and judging. Respectfully, I have difficulty upsetting the judgment below without considering the actual trial and litigation of the matter, at the time it was tried, pre-*Alleyne* and pre-*Hopkins*. That focus, in turn, leads me to agree with the substance of Justice Todd's dissenting expression: this particular defendant was afforded all the United States Constitution could be said to mandate at his trial, and even if the trial court could be said to have "erred" in some way, any error was harmless.

Implicit in the Superior Court panel's approach is a conclusion that appellee's able counsel dropped the *Alleyne* ball. However, it is not difficult to imagine why appellee did not anticipate, or later seek to make use of *Alleyne*, much less why he did not anticipate *Hopkins*. Appellee and his counsel knew from the charging document the simple, age-of-the-victim fact triggered exposure to the mandatory minimum. They knew his jury was going to pass upon that fact pursuant to the beyond a reasonable doubt standard. What they could not know was the future decision in *Alleyne*, its specific

contours, and the future interpretation of that decision in *Hopkins*, arising in a post-*Alleyne* prosecution posing a facial challenge to a different statute. Whatever the reason appellee never raised the claim, he has been afforded the retroactive benefit of *Alleyne*'s non-retroactive, new constitutional rule, as implemented by *Hopkins*, on a facial constitutional challenge he never raised.

I have several difficulties with this case. First, assuming a question of the facial constitutionality of a statute, in a case that would apply *Alleyne* to a trial where no *Alleyne* claim was raised, colorably implicates sentencing legality, I question the Superior Court's practice in not affording the parties an opportunity to be heard before rendering judgment. This is a questionable practice, as recognized by two learned members of the panel below. *See Commonwealth v. Wolfe*, 106 A.3d 800, 807, 809 (Pa.Super.2014) (Bowes, J., concurring, joined by Jenkins, J.) ("I am extremely hesitant to extend [existing Superior Court decisions] absent adequate briefing" and noting "absent adequate briefing, our Supreme Court has declined to *sua sponte* address complex illegal sentencing questions") (citations omitted). As a matter of fairness and prudence, the practice generally should be avoided. *See Freed v. Geisinger Med. Ctr. (Geisinger)*, 607 Pa. 225, 5 A.3d 212, 214 (2010) (noting reargument was granted out of recognition that, prior to *sua sponte* overruling prior decision and applying new decision retroactively, parties should be afforded opportunity to be heard); *Coady v. Vaughn*, 564 Pa. 604, 770 A.2d 287, 294 (2001) (Castille, J., concurring) (we should "not indulge the conceit that, without adversarial presentations, it is possible to discern any and all arguments that may be made" on given issue). Advocacy is essential to the proper discharge of the appellate review function, and it seems a small matter to afford the parties a chance to do so. Participation can serve the salutary function of avoiding error below, sparing this Court the need to review, and in a situation such as this one, perhaps avoiding the necessity to focus on two cases, rather than one, to address related issues:

here, the power to raise a waived *Alleyne* claim *sua sponte,* and the merits of the constitutional claim so raised.

Instances where a defendant seeks benefit of the new constitutional rule represented by *Alleyne* can arise in four distinct circumstances: cases where the defendant preserved an *Alleyne* claim before the decision was handed down and his direct appeal is still pending (an easy case: the defendant gets the benefit of the new rule); cases where the defendant faces trial after *Alleyne* and seeks its benefit (also an easy case, not implicating retroactivity, leaving aside issues of implementing the new rule, *see Hopkins, supra;* ) cases where the defendant did not raise and preserve the claim at trial before (or after) *Alleyne* was decided, but seeks retroactive benefit of the new rule on direct appeal; and cases where the defendant's judgment is final and the defendant seeks retroactive benefit of the new rule on collateral attack.

This case presents an entirely different, artificial scenario: the defendant neither anticipated the *Alleyne* rule nor sought its post-issuance benefit, but the Superior Court raised the claim and awarded relief. The Majority candidly recognizes the issue of the propriety of the Superior Court raising a retroactive *Alleyne* claim, on grounds the sentence is "illegal." The Majority then takes the perfectly reasonable stance that the Commonwealth's failure to address the line of decisions beginning with *Commonwealth v. Aponte,* 579 Pa. 246, 855 A.2d 800 (2004), which has found *Apprendi*-based [1] claims to implicate Pennsylvania's illegal sentencing doctrine,[2] warrants deferring the sentencing legality issue to *Commonwealth v. Barnes,* 122 A.3d 1034 (Pa.2015) (*per curiam* ), where the issue is better developed. I have no objection to deferral. However, deferral raises the question of why we do not hold this case—involving a non-preserved *Alleyne* claim being treated as if it were a claim of preserved trial error—in reserve pending determination of *Barnes.* Any defendant

1. *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000).

2. As the Majority notes, the Commonwealth recognizes *Alleyne* is an extension of the *Apprendi* doctrine.

facing a new prosecution under 42 Pa.C.S. § 9718 can avail himself of *Alleyne* and *Hopkins* to strike the statute.

This brings me to a broader point. Again, some *Alleyne* claims may seek vindication of preserved issues, some may look backward for retroactive relief, and some may involve new prosecutions, seeking to invalidate specific statutes on grounds of facial unconstitutionality. The Court, which does not have total control over the timing of the matters that ripen for decision, is not necessarily positioned to decide new-federal-rule implementation issues in the most logical fashion, or in a fashion allowing for appreciation of relevant nuances. By sheer happenstance, *Hopkins* was decided first, and it involved a new, post-*Alleyne* prosecution arising on our direct appeal docket, following a trial judge holding the statute there facially unconstitutional in the wake of *Alleyne*.[3] We acted without the benefit of the Superior Court's screening function; and, because the appeal did not follow an order granting allocatur, there was not a broad notice to the bench and bar of the potential importance of the case—which may explain the absence of an *amicus* brief on the prosecution side in *Hopkins* providing the sort of broad perspective represented by the able *amicus* briefs, filed on both sides, in this appeal.[4]

3. *Hopkins* involved a mandatory minimum sentence imposable by a judge under 18 Pa.C.S. § 6317(a), upon finding a specified drug offense occurred within 1,000 feet of, among other places, a school. *Hopkins*, 117 A.3d at 249. An *Alleyne*-style claim under Section 6317(a) was not likely to be raised and preserved prior to *Alleyne*, since the core of the constitutional rule is based upon the jury trial right. Operating in a landscape without the specifics of the *Alleyne* holding (much less *Hopkins*), few defendants would demand the jury be tasked with determining if the crimes occurred so near to a school. This is a reality facial challenges obscure: some of the mandatory minimum statutes operated to shield juries from learning things about the defendant, or the crime, many defendants would rather the jury not know. This is particularly true of objective facts, such as age, prior crimes, etc.... It is another reason I believe pre-*Alleyne* prosecutions must be viewed differently.

4. The *Hopkins* docket reflects that, shortly before oral argument, the Pennsylvania District Attorneys Association (PDAA) sought leave to participate in oral argument, despite not having filed an *amicus* brief. Leave was denied. The Attorney General did not seek to participate via brief or argument.

Meanwhile, cases involving retroactive application of *Alleyne*, like this one, and *Barnes*—which optimally should have been decided before, or along with, *Hopkins*—percolated through the Superior Court. The briefing and circumstances in this case and other pending cases make it apparent the question of how best to implement new federal constitutional rules may require more nuance than the *Hopkins* Court had any reason to appreciate. *See, e.g.*, Majority Opinion, at 46–47, 140 A.3d at 656–58 (summarizing PDAA *amicus* brief here).

My concerns about implementing new rules are not limited to statutes affected by *Alleyne*. Many new rules devised by the United States Supreme Court affect areas of Pennsylvania criminal law controlled, or affected, by statutory provisions. In the past several years, the Court has had to take measures to guide implementation of new rules announced in cases such as *Atkins v. Virginia*, 536 U.S. 304, 122 S.Ct. 2242, 153 L.Ed.2d 335 (2002) (barring execution of murderers determined to be intellectually disabled),[5] and *Miller, supra.*[6]

For my part, *Hopkins* having been decided, and the Court having reaffirmed it here, I recognize its current force in the context of post-*Alleyne* prosecutions, where facial challenges are raised. But I am uncomfortable with a retroactive application of a "facially-and-fatally-infected-statute" approach, deriving from the happenstance that *Hopkins* proceeded to decision first, where the infection, in this case, reaches back in time to a case proceeding to verdict before *Alleyne*, where no Sixth Amendment objection was ever lodged, and the core of the Sixth Amendment right powering *Alleyne* was not violated.

In the circumstances, I would defer decision of this case until *Barnes* decides the "illegal sentence" question. I respect the Majority's determination to proceed to decision despite the posture of this case, given the practical and salutary benefit of providing a more immediate answer to guide the post-*Alleyne*

---

**5.** *See Commonwealth v. Sanchez,* 614 Pa. 1, 36 A.3d 24 (2011); *Commonwealth v. Miller,* 585 Pa. 144, 888 A.2d 624 (2005).

**6.** *See Commonwealth v. Cunningham,* 622 Pa. 543, 81 A.3d 1 (2013); *Commonwealth v. Batts,* 620 Pa. 115, 66 A.3d 286 (2013).

76

prosecution, facial-challenge scenario not presented in this case. For my part, I cannot separate the proper decision in this case from the actual circumstances in which it arose, which implicate retroactivity. In my judgment, neither the trial court nor defense counsel here committed any error; and even if error could be found, it was harmless under these circumstances.

Accordingly, I would vacate the order of the Superior Court and remand for consideration of the claims appellee actually raised on his appeal.